FROST, Respondent, *v.* MOTT, Appellant

CLAPP, Respondent, *v.* SAME.

| 34 | 253 |
|---|---|
| 117 | 308 |
| 34 | 253 |
| 132 | 532 |
| 34 | 253 |
| 136 | 258 |

A party attaching property in the possession of his debtor acquires a specific lien on his interest therein, and is entitled, like a judgment creditor, to impeach the title of a fraudulent mortgagee.

A clause, authorizing the mortgagor to retain possession until the mortgagee deems himself insecure, does not render the instrument void, if executed in good faith, and valid in all other respects.

An officer who seizes all the property of a debtor, knowing that part of it is exempt, cannot justify the seizure, by the omission of the debtor to designate a particular portion of it as not subject to execution or attachment.

The officer cannot claim, in behalf of one creditor, the benefit of a waiver of the exemption in favor of another.

One who has an equitable interest in property, which is taken from his possession by a wrongdoer, can maintain an action for the wrong, though he be not the absolute owner.

The defendant cannot set up an adverse claim to the property, in behalf of a third party, who acquiesces in the title of the plaintiff and asserts no interest in the subject of the action.

APPEAL from the Supreme Court. The actions were for the recovery of personal property taken and detained by the defendant, as an officer, under an attachment against Clapp, one of the respondents. The causes were heard before a referee, and judgments were rendered in favor of the respect-

ive plaintiffs, which were affirmed, on appeal, at the General Term in the second judicial district.

The property was taken from the possession of Clapp, the defendant in the attachment suit, on the 10th of June, 1857. It consisted of sixteen sheep and ten lambs. Frost claimed six of the sheep and the ten lambs under a chattel mortgage from Clapp, made and filed on the 20th of May, 1857, to secure the sum of seven hundred dollars, and payable on the 22d of the same month. The mortgage provided that Clapp might remain in possession until Frost should deem himself insecure.

Clapp claimed the ten sheep as exempt property. They had been embraced in the mortgage to Frost; but he subsequently released them from his lien, and relinquished his right in them to the mortgagor.

In each case, exceptions were taken to the refusal of the referee to nonsuit the plaintiff, and to his ultimate conclusions of fact and law.

In the case of Frost, the referee found that the mortgage from Clapp was duly executed and filed; that it was given to secure Frost as his indorser and surety; that the mortgagee had paid $200 already, and was liable to pay $500 more on his account as such surety; that, after default by the mortgagor, the defendant took the property under the attachment, and that its value was sixty dollars. Upon these facts he rendered the appropriate judgment in favor of the plaintiff.

In the case of Clapp, the referee found that the plaintiff was a householder having a family; that he owned the ten sheep in question; that on the 20th of May, 1857, he mortgaged them with his other sheep and lambs to Frost; that on the 12th of June they were released by the mortgagee; that they were worth sixty dollars, and that they were taken and detained from Clapp by the defendant. The judgment was in conformity with the findings.

*J. Z. Storrs,* for the appellant.

*John Thompson,* for the respondents.

Porter, J. A creditor, by attaching property in the possession of his debtor, acquires a specific lien upon his interest, and is entitled, like a judgment creditor, to impeach the colorable title of a fraudulent mortgagee. (*Rinchey* v. *Stryker*, 26 How., 75.)

The defendant attempted to show that the chattel mortgage, on which the claim of Frost was founded, was infected with fraud. In this attempt he failed. Upon the findings of the referee, we are bound to assume that the instrument was made in good faith, and to secure the payment of an honest debt. The continued possession of the property by the mortgagor raised a presumption of fraud, which would have been conclusive under the statute, if the mortgage had not been duly filed. The presumption is one which may be repelled by evidence, where this condition has been complied with; and in this case it was repelled, to the satisfaction of the referee. On the question of fraud in fact, the Supreme Court was the ultimate appellate tribunal; and the only question for us to determine is, whether the mortgage, upon its face, was fraudulent in law. The appellant claims that the instrument was vitiated by the clause, authorizing Clapp to retain possession of the property until Frost should deem himself insecure. Such a provision was neither unlawful, as between the parties, nor injurious to the creditors of the mortgagor.

It was not the design of the statute to annul securities for honest debts, unless the creditor should exact immediate possession, but to defeat secret and colorable transfers, by requiring all instruments, in the nature of chattel mortgages, to be made matters of public record, and by casting on the payee the burden of proving the good faith of the transaction. The purpose of the act was not prohibitory, but remedial. It introduced regulations which presupposed the validity of an honest mortgage, on chattels remaining in the possession of the debtor. Under its provisions, a mortgagee does not prejudice his claim by consenting that the debtor may retain the property until he demands it, if he can

prove that the transaction was honest, and that he has given the constructive notice required by law.

A debtor may secure his creditor by a lien, either upon his chattels or his lands. The continuance of possession would be as unobjectionable in the one case as in the other, but for the facilities which the nature of personal property affords for the perpetration of frauds. Against these the law provides appropriate safeguards; but the honest creditor, who does nothing to mislead or injure others standing in a similar relation, and who complies with the requisitions of the statute, forfeits none of his rights by reasonable indulgence to his debtor.

If the consent, which is here embodied in the instrument, had been given orally by the mortgagee, no one would seriously claim that it raised a conclusive presumption of fraud. Its insertion in the mortgage imparts to it no additional force. What it was lawful to say and do, it was not unlawful to write. It follows, from these views, that the judgment in the first entitled cause should be affirmed.

In the other case, the defense principally relied on is, that the property belonged to the mortgagee, and that the defendant is responsible to him and not to Clapp, for the taking and detention of the sheep claimed as exempt. In considering the questions raised by the appeal, it is to be borne in mind that, upon the facts found, the defendant had no authority to take the ten sheep in question, as against either the mortgagor or the mortgagee. In taking them, he assumed that they were the property of the plaintiff. Ten were exempt by law, but he took the entire flock. There is no privity between him and the mortgagee, whose right he sets up to defeat the plaintiff's recovery. He took them from the plaintiff's possession, and for this purpose he can invoke no aid from his process to relieve him from the character of a naked wrongdoer. In either aspect of the case, as between him and the plaintiff, the latter had the right of possession. He was to retain it, by the terms of the instrument, until demanded by the mortgagee. No proceedings had been taken upon the default, and he was entitled, in equity, to

redeem. Subsequently, and before the suit was commenced, the mortgagee released his interest to the plaintiff. Under these circumstances his right of action was clear. The case falls within the familiar rule, heretofore settled in this court, that actual possession, accompanied by an equitable interest in the plaintiff at the time of the seizure by the officer, is sufficient to maintain the action, and entitle the plaintiff to a return of the property. (*Johnson* v. *Carnly*, 6 Seld., 579.)

As between the plaintiff and the defendant there was no waiver of the exemption; and the appellant, who took the entire flock, cannot justify the wrong by the claim, that he did not know which of them to leave. He neither requested the plaintiff to designate them, nor made any designation himself. The mere silence of the party, while an officer is stripping him of property exempt from seizure, under color of legal authority, furnishes no protection to the wrongdoer.

Both judgments should be affirmed.

All the judges concurring, except MORGAN, J., who expressed no opinion,

Judgments affirmed.